Shackelford, J.,
delivered the opinion of the Court.
This was an action of ejectment, to recover the possession of a small tract of land. The plaintiff’s deed bears date in 1837. The plaintiff and defendant derived title through John Mynatt. The controversy between them is, as to the location of the beginning corner, and terminus of the first line, in the plaintiff’s deed. The deed calls to begin at a stake in lot line D, corner of Robert Duncan’s, (now Greybeat’s,) line; thence, with his line, north, 45 degrees east, 110 poles, to a stake in said line; then north, 45 degrees west, 220 poles, to the top of Copper Ridge, etc.
*164 The plaintiff insists, the beginning'corner of his tract is in lot line D, in a hollow, near one Nancy Kroutz’s, running from thence to a stake near a crooked gum. To commence at the corner claimed by plaintiff, and run to the crooked gum, would include the lands in dispute. To commence in lot line D, as insisted by-defendants, and run 110 poles, to a stake, would not include the land in controversy. It will require an extension of fifty poles, to reach the stake near the crooked gum.
It was in proof, the lines were not seen, in selling the lands to plaintiff; that a pine knot stake was planted, as a corner, near the crooked gum, by the vendor. These facts are stated, for the understanding of the principle involved. , The jury found a verdict for defendant. The plaintiff moved for a new trial, which was refused, and he has appealed to this Court.
During the progress of the trial, the plaintiff offered to prove,
1st, The statement and declarations of pérsons since deceased, and made before any controversy had arisen between the parties, that the beginning corner of plaintiff’s tract was near the house of one Nancy Kroutz, and that the next corner was at or near a black gum, but that those persons- had never lived on the lands, or adjoining tracts.
2d, The plaintiff also offered to introduce proof, that for the last twenty-five or thirty years, there was a common reputation in the neighborhood, that the corners of plaintiff’s land was at or near Nancy Kroutz’s, and at the crooked gum, which the Court refused to *165 receive; and to the rulings of the Court the plaintiff excepts.
In rejecting the introduction of the evidence, we think there was error. By' the common law, hearsay testimony is not admissible, except in cases of pedigree, or in ancient boundaries, where public rights are involved, in this State, and many of the States of this Union. The common law has been altered, from necessity. We have sacrificed the principles upon which the rules of evidence are based. The corners and lines of our lands, in many instances, rest alone in reputation. Those who established them have passed, or are passing, away, and iq a few years no living witnesses will be found, to prove the original boundaries or terminus of our lands. They were, in many instances, established amidst dangers and difficulties, and the knowledge rested with but few; and if this principle was as insisted, the necessity of the case would require its adoption. The principle was settled in this State, as early as 1812, by this Court, in case of Beard vs. Talbot, Cook’s Rep., 142; in which it was held, that what a man then dead heard another person, also dead, say, in refence to the location of a corner, may be given in evidence. In the case of Holland vs. Overton, 4 Ter., 486, reputation, as evidence, was admitted, to establish a corner where a stake was called for in the original grant.
The principle has been the settled law of this State, that, in questions of boundaries, declarations of persons who are dead may be given in evidence, as to the locations of corners and boundary lines. The declarations must have been made antelitem mortem. This principle *166 was settled by the Courts of North Carolina at a very early period. In 1 Hanks, 45, it was held, boundaries exist in common reputation, and for that reason hearsay evidence was admitted. In 3 Dev., 342, the declaration of a deceased individual, as to a line or comer, were permitted in evidence, and the weight of common reputation given it. The learned Judge remarked, “whether it was in the spirit or reason of the rule, it is now too late to inquire. It is the well established law of the State, and although it may sometimes lead to falsehood, it more often tends to the establishing of truth.” .
The Supreme Court of the United States, 6 Peters, 228, also recognized the principle. The Court say, land marks are frequently formed of perishable materials, which pass' away with the generation in which they are made, by the improvements of the country, and other causes, and often destroyed. It is, therefore, important, in many cases, that hearsay evidence should be admitted, to establish ancient boundaries, but such testimony should be pertinent to the issue between the parties: 1 G-reenleaf, 191, and note, p. 192.
The testimony offered, and rejected by the Court, was pertinent to the issue, and the Court was in error in rejecting it. There was much testimony to the same point. We cannot say what influence the evidence rejected might have had upon the jury, if it had been before them, in determining their verdict. The plaintiff was entitled to the benefit of it.
We are, therefore, constrained to reverse, the judgment, and remand the cause.